**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Steven E. Hobbs, Sr.,<br><br>*Plaintiff*,<br><br>v.<br><br>Igor Goncharko, *et al.*<br><br>*Defendants*. | No. 25 CV 3398<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Steven Hobbs, Sr., appearing *pro se*, filed suit against the property owners and leasing agents involved in the renting of his Chicago apartment. He has introduced claims of racial discrimination, disability discrimination, and retaliation under the Fair Housing Act, as well as a discriminatory breach of contract claim under 42 U.S.C. § 1981. Before the court are two motions to dismiss for failure to state a claim, filed by Coldwell Banker Residential Real Estate LLC ("Coldwell Banker"), a real estate company, and property owners Igor Goncharko and 5120 South LLC ("Goncharko" and "5120 South" or, jointly, "Goncharko/5120"). Goncharko/5120's motion is denied in part and granted in part. [Dkt. 16, 39]. Coldwell Banker's motion is granted in full.

## I. Background

To decide the motion to dismiss, the court accepts as true all well-pleaded allegations set forth in Plaintiff's first amended complaint and draws all reasonable inferences in his favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

Plaintiff Hobbs is a Chicago resident and commercial mortgage broker. [Dkt. 8 ¶ 5].[1] Prior to April 2024, he agreed to rent an apartment from The Stewardship Group LLC and The Stewardship Group Washington Park, LLC ("The Stewardship Group"). [*Id.* ¶¶ 9, 12]. Coldwell Banker facilitated the parties' lease, which Hobbs alleges—at $2,000 per month—exceeds the affordable-housing rent cap set by the City of Chicago in its Emergency Relief for Affordable Multifamily Properties Program (ERAMP). [*Id.* ¶¶ 10, 15, 22]. He alleges that Coldwell Banker failed to disclose ERAMP terms when "facilitat[ing] the lease electronically." [*Id.* ¶ 22].

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

In April 2024, Hobbs alleges that he entered into a purchase agreement with The Stewardship Group to "buy the property for affordable housing purposes," but that the group instead sold the property to Goncharko and 5120 South. [*Id.* ¶¶ 13–14, 7–8]. Hobbs alleges that the sale "breached th[e purchase] agreement without cause," thereby violating ERAMP and resulting in an unpaid $78,000 mechanics lien "for unpaid consulting services." [*Id.* ¶ 13]. Hobbs, who is Black, also alleges that denying him "a fair opportunity to purchase" the property was "racially motivated." [*Id.* ¶ 14].

Hobbs also claims that the following occurred at some unspecified point during his tenancy, which continued under Goncharko and 5120 South's ownership. He repeatedly requested and was refused repairs due to "severe neglect" of the property, which included "mice infestations, no main entrance locks, inadequate lighting, improper maintenance, and water leakage from the roof." [*Id.* ¶ 16]. In particular, he alleges that his unit had a three-foot hole in the bedroom ceiling, and that "non-African American tenants received better living conditions." [*Id.* ¶ 15]. He also alleges that, when he sought payment for the unpaid lien, Goncharko "used a racial slur ('N-word') and told him to 'get off my land.'" [*Id.* ¶ 20].

Goncharko and 5120 South filed for eviction on January 15, 2025[2]—allegedly "without proper service, followed by a fraudulent 5-day notice on February 15." [*Id.* ¶ 19]. At some point, Goncharko also allegedly locked Hobbs's car in the property's lot, "claiming he couldn't park there for not paying rent." [*Id.* ¶ 21].

An insurance dispute soon followed. On February 6, Hobbs slipped on the unit's allegedly unmaintained, icy front porch steps and suffered a spinal injury "causing severe pain and mobility issues." [*Id.* ¶ 17]. He claims that "Defendants … ignor[ed] requests for the property's insurance provider for the fall, which [he] believes was due to his race and disregard of his disability status." [*Id.* ¶¶ 18, 23]. He believes that the eviction, restricted access to his car, and insurance dispute were all retaliatory. [*Id.* ¶¶ 19, 21, 23].

Hobbs has sued The Stewardship Group, Coldwell Banker, Goncharko, and 5120 South for violations of the Fair Housing Act ("FHA") and Civil Rights Act, based on alleged racial and disability discrimination, retaliation, and breach of the purchase agreement. [*Id.* ¶¶ 27–30]. Both Coldwell Banker and Goncharko/5120 have moved to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[2] The complaint alleges this date, so the court takes it as true, though it notes that Goncharko says the eviction proceedings began in November 2024. [Dkt. 39 at 4.] Hobbs acknowledges this earlier date in a response brief. [Dkt. 44 at 4.] For purposes of resolving the motion, the specific date is irrelevant.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. A plaintiff's right to relief must be "plausible, rather than merely speculative," which requires him to allege "just enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up). Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints are construed "generously," and reviewed "by substance, not label," *United States v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021); *United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020). The filings must nonetheless adhere to procedural rules. *See Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2021).[3]

## III. Analysis

Hobbs's four-count complaint alleges that the defendants violated various statutes including 42 U.S.C. §§ 3604(b) (racial discrimination in housing), 3604(f) (disability discrimination in housing), 3617 (retaliation), and 1981 (discriminatory breach of contract). [Dkt. 8 ¶ 27–30] His responses in opposition to the motions to dismiss also raise claims for deceptive practices, municipal code violations, defamation, and intentional infliction of emotional distress. [Dkts. 26 at 3; 47 at 10]. A plaintiff, however, "cannot amend his or her complaint to state new claims in such a motion." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). The court will thus consider only the violations of the Fair Housing Act and Civil Rights Act raised in Hobbs's first amended complaint. It addresses each in turn.

### A. 42 U.S.C. § 3604(b)

Hobbs has sued under § 3604(b), which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Two questions follow. First, whether the statute covers defendants' alleged post-acquisition actions and behaviors. Second, whether Hobbs has sufficiently pleaded discrimination—as to each defendant—in connection with those activities.

#### 1. Post-Acquisition Claims

In *Bloch v. Frischholz,* the Seventh Circuit held that § 3604(b) applied to post-acquisition claims involving constructive eviction and discriminatory rules that are

---

[3] The court therefore does not consider Hobbs's July 29 response to Coldwell Banker's motion to dismiss, *see* docket entry 44, which was filed well after his June 24 deadline, and after he had already (twice) responded substantively to the motion. *See* [Dkts. 25, 26.]

"condition[s] of sale." 587 F.3d 771, 779 (7th Cir. 2009) (en banc). It later clarified the statute's broader application to post-acquisition "discrimination [that] affect[s] the provision of services and facilities connected to [one's] rental." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 867 (7th Cir. 2018) (holding that landlord's disregard of discriminatory tenant-on-tenant harassment established cognizable post-acquisition claim).

Hobbs has identified a series of actions that he alleges prove racial discrimination and violate § 3604(b). These include overcharging rent, breaching the purchase agreement to buy the property,[4] denying ERAMP protections, using racial slurs, denying access to his car in the property lot, and pursuing eviction. [Dkt. 8 ¶ 27]. The factual allegations also specifically mention racially motivated denials of maintenance services and refusals to provide insurance information in connection with an on-premises injury. [*Id.* ¶¶ 15, 18].

Accepting these statements as true, as the court must at the dismissal stage, Hobbs's allegations fall under the *Bloch-Wetzel* umbrella. Section 3604(b) applies to the discriminatory overcharging of rent, since rent is a condition of sale. *See United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992) (holding that offering apartments to Black testers at higher rental rates violates the Fair Housing Act). The same is true of a race-based denial of affordable-housing protections and refusal to provide insurance information. Meanwhile, this jurisdiction has explicitly recognized discriminatory eviction, denied maintenance, and denied access to the "totality of the rented premises" as actionable under § 3604(b). *Bloch*, 587 F.3d at 779 (eviction); *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 617 (7th Cir. 2011) (maintenance); *Wetzel*, 901 F.3d at 867 (totality of premises). The use of slurs may also qualify, depending on their frequency, severity, and whether they are "physically threatening or humiliating rather than merely offensive." *Id.* at 862.

These post-acquisition activities are actionable, then, pending allegations of discrimination.

### 2. Discrimination

A Fair Housing Act violation can be proved through either disparate-treatment or disparate-impact theories—the first based on "'discriminatory intent or motive'" and the second based on practices having "'disproportionate[] adverse effect[s] on minorities.'" *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, 2025 WL 975967, at *4 (N.D. Ill. Mar. 31, 2025) (quoting *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524–25 (2015)). Hobbs's complaint discusses "discriminatory intent" and "discriminatory treatment," rather than disparate

[4] As discussed in Part D *infra*, the alleged breach does not implicate either of the moving defendants, and so the court need not analyze it in ruling on the motions to dismiss.

impact,[5] and so the court need only consider the former. [Dkt. 8 ¶¶ 20, 22]. *See H.O.P.E., Inc. v. Lake Greenfield Homeowners Ass'n*, 330 F. Supp. 3d 1105, 1115 n.8 (N.D. Ill. 2018).

To survive a motion to dismiss, then, the complaint must allege facts making it plausible to infer "that race was a 'motivating factor' in defendants' conduct." *Nat'l Fair Hous. All.*, 2025 WL 975967, at *42 (quoting *Runkel v. City of Springfield*, 51 F.4th 736, 743 (7th Cir. 2022)). At the pleading stage, this standard isn't high. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). "*Twombly/Iqbal* require[] nothing more" than "identifying (1) who discriminated against [plaintiff]; (2) the type of discrimination that occurred; and (3) when the discrimination took place." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Swanson*, 614 F.3d at 405)). *See also E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007) ("once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim").

In Hobbs's complaint, the § 3604(b) claim does not itself distinguish between defendants with respect to each alleged action, nor does it explain *how* each action establishes racial discrimination. The court has thus parsed his alleged facts to match each activity with the relevant defendant, as well as with allegations of underlying discrimination.

**a. Goncharko/5120**

Goncharko and 5120, together, have moved to dismiss the § 3604(b) claim, arguing that Hobbs has failed to plead facts tying them to a discriminatory breach of the purchase agreement with The Stewardship Group, that there exist no allegations that the ERAMP protections transferred upon the property's sale, and that Hobbs never alleged that he even had a lease with Goncharko/5120. [Dkt. 39 at 2–3].

Regardless of whether these arguments have merit, the motion does not address numerous other relevant allegations in the pleading. Hobbs specifically alleges that Goncharko, 5120, or both pursued eviction, refused maintenance, and

---

5 Hobbs's response to Coldwell Banker's motion to dismiss mentions disparate impact for the first time. [Dkts. 25 at 2; 26 at 3]. It is an "axiomatic rule," however, that a "plaintiff may not amend his complaint" by pivoting to new theories in a response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). In any event, Hobbs misunderstands the theory, which requires a "causal connection between … policies and a disparate impact upon members of a protected class." *Cnty. of Cook v. HSBC N. Am. Holdings Inc.*, 314 F. Supp. 3d 950, 967 (N.D. Ill. 2018) (citing *Inclusive Communities*, 576 U.S. at 543). Hobbs alleges only that discrete actions negatively affect him individually, and that he happens to be a member of a protected class.

denied him access to his parked car. Any one of these, if motivated by race, establishes a basis for a § 3604(b) claim.

To that end, Hobbs also alleges that Goncharko directed a racial slur at him. [Dkt. 8 ¶ 20] ("Goncharko used a racial slur ('N-word') and told him to 'get off my land'"). Goncharko/5120 argues that Hobbs "does not state a date when [use of the slur] took place and how it was evidence of a hostile environment," but Hobbs is not required to do either. [Dkt. 48 at 3]. An FHA plaintiff need not plead the specific date the alleged discrimination took place. *Deboard v. BH Urb. Station, LLC*, 2023 WL 11931165, at *6 (S.D. Ind. Mar. 14, 2023) ("The exact date this alleged discrimination occurred does little to make DeBoard's claim more plausible. Conversely, his claim is no less plausible without reference to a specific date.") And even absent an allegation that a racial epithet created a hostile environment, it may still be relevant in a discrimination case as "circumstantial evidence of intentional discrimination." *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Goncharko/5120 provides no rationale for why the court may not consider the allegation in this context.

Hobbs also specifically alleges that non-African American tenants received better living conditions than he did, despite repeated requests for repairs. [Dkt. 8 ¶ 15]. So, too, does he allege that the insurance dispute was racially motivated. [*Id.* ¶ 18]. Goncharko and 5120, as property owners, are among the plausible defendants responsible for any misconduct in this regard.

These facts parallel those in *Mehta*, where the Seventh Circuit held that a complaint plausibly alleged both post-acquisition misconduct and sufficient facts to infer a racial motive. 432 F. App'x at 617. There, an Indian plaintiff sued his homeowner's association for violating § 3604(b). *Id.* at 615. He alleged that the association refused him maintenance services and restricted him from using certain facilities, despite providing such services and facility access to white homeowners. *Id.* at 617. He also "alleged that an association employee shouted at him in racial terms, 'you are not moved out yet, you Indian.' These allegations suffice[d] to state a plausible claim of discrimination." *Id.* The same is true here.

Eventually, Hobbs must put forward evidence to support his allegations. *See Swanson*, 614 F.3d at 406–07. But for now, he has met the Rule 12(b)(6) pleading standard, so Goncharko/5120's motion to dismiss the § 3604(b) claim is denied.

#### b. Coldwell Banker

Coldwell Banker has moved to dismiss Hobbs's § 3604(b) claim on the basis that he fails "to allege any facts against the Broker Defendants establishing any racial discrimination." [Dkt. 16 at 2]. It is correct in this regard.

The complaint implicates Coldwell Banker only for "facilitat[ing] the lease electronically without disclosing ERAMP terms" and—alongside The Stewardship

Group—for "charg[ing] Plaintiff $2,000/month, violating fair housing protections meant to ensure equal affordable housing." [Dkt 8 ¶ 22, 15]. In doing so, it neglects to plead facts sufficient to infer racial motivation. Hobbs doesn't allege that Coldwell Banker "disclos[ed] ERAMP terms" to non-Black individuals, or that it charged these individuals less in rent. *See* [*Id.* ¶ 22]. Or, that it targeted him in any way *because* of his race. His complaint and response brief, even generously construed, frame Coldwell Banker's role as that of an upstream participant in a real estate saga later marred by discrimination.[6] But this doesn't establish a plausible basis for Coldwell Banker's own liability. *See Nat'l Fair Hous. All.*, 2025 WL 975967, at *43 (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)) (observing that indirect FHA liability requires principal-agent relationship).

The Seventh Circuit's Title VII caselaw provides a helpful analogue. *See Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) (Title VII and FHA are "functional equivalent[s]" and "given like construction and application"). In *Whitaker v. Milwaukee Cnty., Wisconsin*, the appeals court considered whether a plaintiff who faced discrimination from her state government supervisor could also sue the county, which previously administered the program for which she worked. 772 F.3d 802, 809–10 (7th Cir. 2014). Though the plaintiff remained a county employee, upon transferring administration of the program to a state agency, the county no longer "managed the day-to-day affairs of the office." *Id.* at 804. Thus, because "nothing in the record suggests that the County participated in the alleged discriminatory conduct or failed to take corrective measures within its control," it could not be held liable. *Id.* at 812. For similar reasons, Coldwell Banker, as the real estate broker who was responsible only for facilitating a lease between a landlord and tenant, is not liable for discrimination attributed to the landlord after the lease was signed.

To argue otherwise, Hobbs twice cites *Lathan v. Brinkerhoff*, which neither defense counsel nor the court can locate, for the proposition that "[b]rokers can be liable under FHA for discriminatory leasing practices." [Dkts. 25 at 4; 26 at 3]. The ghost citation aside,[7] he is correct that discriminatory leasing practices are actionable. *See* § 3605. But he is not alleging leasing discrimination on Coldwell

[6] If there was any question about what he was alleging in the complaint, Hobbs's responses to the motion to dismiss make clear that he is casting Coldwell Banker as an indirect actor, as he pivots away from allegations of racial animus. His responses clarify that he believes Coldwell Banker's actions disparately impacted him as a disabled individual, even though the alleged disability occurred well after the lease was executed. [Dkts. 25 at 2; 26 at 3].

[7] Federal Rule of Civil Procedure 11 applies to *pro se* litigants, and sanctions may result from such conduct, especially if the citation to *Lathan* was not merely a typographical or citation error but instead referred to a non-existent case. By presenting a pleading, written motion, or other paper to the court, an unrepresented party acknowledges they will be held responsible for its contents. *See* Fed. R. Civ. P. 11(b).

Banker's part—only that it facilitated a transaction that, eventually, led to discriminatory treatment by other actors. This is insufficient to survive a motion to dismiss under Rule 12(b)(6). The § 3604(b) claim against Coldwell Banker is therefore dismissed.

### B. 42 U.S.C. § 3604(f)

Hobbs's complaint also alleges a violation under § 3604(f), which attaches liability for housing discrimination because of a handicap—defined as "a physical or mental impairment which substantially limits one or more of such person's major life activities." § 3602(h)(1). Three distinct theories give rise to a violation: "(1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 967 (7th Cir. 2018).

His claim appears to rely on the first and third, alleging that "[d]efendants … fail[ed] to accommodate Plaintiff's disability through necessary repairs and target[ed] him for eviction despite his condition." [Dkt. 8 ¶ 28]. Again, he fails to distinguish between defendants, and so the court considers each in turn.

#### 1. Goncharko/5120

Goncharko/5120 argues, without citing any case, that Hobbs "fails to plead facts that would place his disability as one covered by the Fair Housing Act." [Dkt. 39 at 3]. But the complaint alleges that a spinal injury has caused "severe pain and mobility issues," and mobility is explicitly recognized in the Seventh Circuit as a major life activity. [Dkt 8. ¶ 17]; *Reed v. Illinois*, 808 F.3d 1103, 1105 (7th Cir. 2015). This suffices at the pleading stage.

Issues arise, however, when analyzing the substance of Hobbs's discrimination claims. His argument for disparate treatment—or intentional discrimination—is based on allegations that he was "target[ed] for eviction *despite* his condition." [*Id.* ¶ 28] (emphasis added). Yet, "[p]urposeful discrimination requires more than intent as volition or intent as awareness of consequences; it involves a decisionmaker's undertaking a course of action 'because of,' not merely '*in spite of*,' the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 677 (citations omitted and cleaned up); *Despite*, Merriam-Webster, https://www.merriam-webster.com/dictionary/despite ("in spite of"). The allegation is also inconsistent with the facts as alleged, since Goncharko/5120 initiated eviction before the injury.

The "fail[ure] to accommodate" claim fares no better. To pursue the claim, Hobbs must plead that "(1) [he] had a disability; (2) the defendant was aware of disability; and (3) the defendant failed to reasonably accommodate the disability." *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022). Again, the mobility-affecting spinal injury satisfies the first prong, despite

Goncharko/5120's argument to the contrary. The argument that "[t]here is no indication from the pleading that GONCHARKO/5120 knew or knows that Plaintiff has any disability" is equally insufficient. [Dkt. 39 at 3]. Hobbs alleges that, after the slip and fall, he sought the defendants' insurance information in connection with a personal injury dispute. Viewed in a light most favorable to him, one could plausibly infer that Goncharko/5120 was sufficiently on notice to, at minimum, inquire further. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) ("Where notice is ambiguous as to the precise nature of the disability … but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification").

Prong three poses the problem. Reasonable accommodations, under § 3604, refer to "rules, policies, practices, or services" that are "necessary to afford such person equal opportunity to use and enjoy a dwelling." These are distinct from "reasonable modifications," which a landlord need only permit the tenant to make at his own expense. Hobbs alleges that Goncharko/5120 failed to accommodate his disability "through necessary repairs." [Dkt. 8 ¶ 28]. But "a 'request for (re)construction or repair is more appropriately a request for a modification than an accommodation' and therefore is not actionable under the FHA." *Fedynich v. Stalkfleet*, 2025 WL 1444434, at *14 (N.D. Iowa May 20, 2025) (quoting *Weiss v. 2100 Condo. Ass'n, Inc.*, 941 F. Supp. 2d 1337, 1344–45 (S.D. Fla. 2013) (collecting cases)). *See also Fagundes v. Charter Builders, Inc.*, 2008 WL 268977 at *6 (N.D. Cal. Jan. 29, 2008) ("request for construction or repair is not actionable under subsection (B)"). Indeed, in the Seventh Circuit, examples of "rules, policies, practices, or services" include zoning ordinances, parking restrictions, and no-pets policies—not unit maintenance. *See, e.g., Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 785 (7th Cir. 2002); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

Hobbs has therefore failed to plead that he requested an accommodation. Because neither the requested repairs nor targeted eviction is actionable, the § 3604(f) claim does not survive dismissal.

#### 2. Coldwell Banker

The alleged misconduct—the requested repairs and the targeted eviction—are landlord-specific. The complaint pleads no facts tying Coldwell Banker to either, and the court doesn't see how it could. Coldwell Banker's role in the affair predates the disability. Accordingly, its motion to dismiss the § 3604(f) claim is granted.

### C. 42 U.S.C. § 3617

Hobbs has also sued under § 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment" of their FHA rights. He specifically alleges that "Defendants … retaliat[ed] against

Plaintiff with eviction, threats, and withholding legal information for exercising FHA rights, including requesting repairs and pursuing funds owed." [Dkt. 8 ¶ 29].

To pursue a § 3617 retaliation claim, Hobbs must allege—against each defendant—that "(1) []he engaged in protected activity; (2) []he suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel*, 901 F.3d at 868.

### 1. Goncharko/5120

Goncharko/5120's motion to dismiss argues that Hobbs "fails to plead facts which would show that the evictions proceedings were motivated by any *intent to discriminate*." [Dkt. 39 at 4] (emphasis added). Their reply, meanwhile, argues that Hobbs "has not *proven* that the eviction proceedings are retaliatory for any complaints or suits" brought against them. [Dkt. 48 at 4] (emphasis added). The Seventh Circuit, however, is clear that "discriminatory animus is not" an element of retaliation, and that a plaintiff need not *prove* anything at the pleading stage. *Wetzel*, 901 F.3d at 868 ("[l]ike all anti-retaliation provisions, it provides protections not because of who people are, but because of what they do") ; *Herndon v. Hous. Auth. of S. Bend, Indiana*, 670 F. App'x 417, 419 (7th Cir. 2016) (rejecting "higher pleading burden" requiring showing of proof).

The retaliation claim still fails. Eviction qualifies as an adverse action, and causation need only be alleged to survive a motion to dismiss. *See id.* However, nowhere in the complaint does Hobbs allege that he engaged in a protected activity. He states that Goncharko/5120 retaliated because he requested repairs and pursued funds owed, seemingly in connection with an unpaid lien. But he doesn't allege that either occurred in an FHA context, as is necessary for a cognizable § 3617 claim. *Johnson v. Flannery*, 2022 WL 103710, at *2 (N.D. Ill. Jan. 11, 2022) ("That may be retaliation, but it is not retaliation under the Fair Housing Act").

True, the requests, together with allegations before this court of disparate treatment, are sufficient to now state a plausible § 3604(b) violation against Goncharko/5120. Hobbs, however, doesn't allege that he ever previously complained—to the property owner or to a housing authority—that the maintenance refusals were discriminatory. *See Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) ("no evidence that [plaintiff] called HUD to report a *discriminatory* housing practice" (emphasis added)). The same is true regarding the lien dispute. Absent any allegation that he sought the unpaid funds pursuant to his FHA rights, he cannot now characterize it as a protected activity.

Because Hobbs has not alleged that he engaged in a protected activity, he cannot claim that Goncharko/5120 retaliated in a manner recognized under § 3617. The motion to dismiss the claim is therefore granted.

#### 2. Coldwell Banker

As with the § 3604(f) claim, the misconduct, as alleged, implicates only Goncharko/5120. Coldwell Banker's motion to dismiss the § 3617 claim is also granted.

### D. 42 U.S.C. § 1981

Finally, Hobbs's complaint alleges a violation under 42 U.S.C. § 1981 based on "[d]efendants' racially motivated breach of the purchase agreement and refusal to honor contractual obligations." [Dkt. 8 ¶ 30]. But only The Stewardship Group was allegedly party to the purchase agreement, and thus capable of breaching it. *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015) ("cannot … *sue a non-party* for breach of the contract simply because the non-party has a close relationship with the other party to the contract who has breached" (emphasis in original)). Absent facts alleging, say, tortious interference, non-parties Coldwell Banker, Goncharko, and 5120 South are improper defendants for this claim. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). Both motions to dismiss the § 1981 claim are therefore granted.

## IV. Conclusion

For these reasons, Goncharko/5120's motion to dismiss is denied in part and granted in part, and Coldwell Banker's motion to dismiss is granted in full. Plaintiffs are ordinarily given at least one opportunity to amend a complaint "[u]nless it is *certain* from the face of the complaint that any amendment would be futile." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original). The court therefore dismisses the claims as follows: against Goncharko/5120, Count II (§ 3604(f)) and Count III (§ 3617) are dismissed without prejudice. Count IV (§ 1981) is dismissed with prejudice. Against Coldwell Banker, Count I (§ 3604(b)) is dismissed without prejudice. Count II (§ 3604(f)), Count III (§ 3617), and Count IV (§ 1981) are dismissed with prejudice, because amendment would be futile.

Enter: 25-cv-3398
Date: September 3, 2025

Lindsay C. Jenkins
United States District Court Judge