UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Steven E. Hobbs, Sr., *Plaintiff*, v. Igor Goncharko, *et al.*, *Defendants*. | No. 25 CV 3398 <br><br> Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Steven Hobbs, Sr., appearing *pro se*, introduced Fair Housing Act claims against the leasing agents and property owners involved in the renting of his Chicago apartment. Previously, Coldwell Banker Residential Real Estate LLC ("Coldwell Banker") and property owners Igor Goncharko and 5120 South LLC (together, "Landlord Defendants") each moved to dismiss Hobbs's claims of racial discrimination, disability discrimination, and retaliation. The court granted the motions in part, providing Hobbs leave to amend, which he did. Pursuant to Federal Rule of Procedure 12(b)(6), the defendants have again moved to dismiss. Coldwell Banker's motion is granted, while Landlord Defendants' joint motion is denied.

I. Background[1]

The court's prior opinion details the pertinent facts. [Dkt. 52.] To summarize, Plaintiff Steven Hobbs, Sr., an African American man, was evicted from his Chicago apartment in August 2025. [Dkt. 60 ¶¶ 1, 14.] Defendant Coldwell Banker, a real estate brokerage, introduced him to the property in early 2024 and facilitated his lease. [*Id.* ¶¶ 7, 9.] It did so, he says, "without disclosing that the building was subject to the City of Chicago's ERAMP program, which mandates affordable rent caps." [*Id.*] It therefore charged him an above-cap rent of $2,000 per month, the first installment of which he paid to Coldwell Banker as a deposit. [*Id.*]

Soon after, Defendants Goncharko and 5120 South acquired the property and became Hobbs's landlords. [*Id.* ¶ 10.] He contends that "they provided [him] with inferior maintenance and living conditions compared to non-Black tenants," *id.*, and called him a racial slur. [*Id.* ¶ 23.] In February 2025, after they had filed for eviction, Hobbs slipped on his "icy, unmaintained front porch steps, suffering severe spinal fractures [] that permanently limit his mobility." [*Id.* ¶ 11.] He notified Landlord

---

[1] The court accepts as true plaintiff's well-pleaded allegations and draws all reasonable inferences in her favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

1

Defendants of his disability and requested the following accommodations: (a) doorbell and entry locks, a secure entry system, and secure window guards because he was now "unable to defend himself in case of emergency or burglary," (b) remediation of a severe rodent infestation, and (c) "settlement on eviction proceedings or a payment plan due to his disability-related financial hardship." [*Id.* ¶ 12.] All requests were ignored or refused. [*Id.*]

After requesting accommodations and "filing lawsuits to enforce his rights," Landlord Defendants' conduct toward Hobbs "escalated." [*Id.* ¶ 13.] In July, he received a "vague[,] baseless, intrusive '48-Hour Notice to Enter' his apartment." [*Id.*] Eviction proceedings accelerated, and in August he was forcibly removed from his apartment. [*Id.* ¶¶ 13–14.]

Hobbs sued Coldwell Banker, Goncharko, and 5120 South, raising claims under the Fair Housing Act. After they moved to dismiss Hobbs's first amended complaint ("FAC"), this court dismissed some—but not all—claims, permitting his racial discrimination claim against Landlord Defendants to survive. [Dkt. 51.] It also provided Hobbs an opportunity to amend deficient claims of racial discrimination against Coldwell Banker, and of disability discrimination and retaliation against Landlord Defendants. [*Id.*] After Hobbs filed his second amended complaint ("SAC"), defendants again moved to dismiss. [Dkt. 63; Dkt. 66.]

\* \* \*

Before analyzing the motions, however, the court would be remiss if it did not re-emphasize that litigants who cite non-existent cases—or who otherwise hallucinate citations—may be sanctioned. *Glass v. Foley & Lardner LLP*, 2025 WL 3079280, at \*1 (W.D. Wis. Nov. 4, 2025) ("pitfalls of submitting court filings that contain hallucinated citations are obvious, and courts have sanctioned licensed attorneys and self-represented litigants alike"). After Hobbs twice cited the fictitious Lathan v. Brinkerhoff in his first go, the court observed that "Federal Rule of Civil Procedure 11 applies to *pro se* litigants, and sanctions may result from such conduct, especially if the citation to Lathan was not merely a typographical or citation error but instead referred to a non-existent case." [Dkt. 52 at 7 n.7.[2]] Nevertheless, Hobbs's latest response brief repeats the error. [*See* Dkt. 67 at 4, 5, 7 (mis-citing *City of Chicago v. Matchmaker*, *Oconomowoc v. Greenfield*, and *Vargas v. Cook Cnty. Sheriff*, while citing *Bloch v. Frischholz* for conclusions not found in the case.)] While the court will not impose sanctions here, it warns Hobbs of the risk that his case could be dismissed with prejudice should he do so again.

---

[2]   Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. A plaintiff's right to relief must be "plausible, rather than merely speculative," which requires him to allege "just enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up). Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints are construed "generously," and reviewed "by substance, not label," *United States v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021); *United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020).

## III. Analysis

Hobbs has amended his complaint, and so the court re-analyzes his Fair Housing Act claims for racial discrimination against Coldwell Banker, and for disability discrimination and retaliation against Landlord Defendants. 42 U.S.C. §§ 3604(b), 3604(f), 3617.

### A. Racial Discrimination (Coldwell Banker)

Hobbs's FAC presented a disparate-treatment theory of discrimination against Coldwell Banker, which the court dismissed because he "neglect[ed] to plead facts sufficient to infer racial motivation." [Dkt. 52 at 7.] In his SAC, he pivots to a disparate-impact theory, *see* dkt. 60 ¶ 20, which does not challenge "discriminatory intent or motive," but rather "practices that have a 'disproportionately adverse effect on minorities.'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Specifically, he now alleges that Coldwell Banker's practice of "concealing affordable housing requirements and charging above-cap rents" disproportionately affects minority tenants, "who are more likely to seek and qualify for affordable housing." [Dkt. 60 ¶ 18.]

For an FHA disparate impact claim, plaintiffs "must plead facts alleging a causal connection between a policy or action and a disparate impact on a protected class." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 484–85 (7th Cir. 2025). Coldwell Banker argues that "there is no Coldwell policy that Plaintiff can point to that caused any disparate impact to minority owners." [Dkt. 63 at 2.] Regardless, it says, the SAC "does not include any data or facts showing any causal connection." [*Id.* at 3.]

Again, the supposed policy is Coldwell Banker's practice of "concealing affordable housing requirements and charging above-cap rents." [Dkt. 60 ¶ 18.] Even assuming that this was Coldwell Banker's practice—as opposed to a one-time

3

oversight—the complaint fails to sufficiently plead a causal connection to any disparate impact. In fact, it's unclear as to what, precisely, the alleged impact is.

Is it that nondisclosure deters minority would-be tenants from seeking these rentals? If so, it is inconsistent with Hobbs's own experience: he *did* pursue the above-cap rental. *See Carpenter v. Bd. of Regents of Univ. of Wisconsin Sys.*, 728 F.2d 911, 915 (7th Cir. 1984) ("plaintiff in a disparate impact case must show that he or she was really injured by the policy alleged to have had a disparate impact").

Or is it that minority tenants suffer financially at a disproportionate rate because of the nondisclosure? This is more consistent with Hobbs's experience of being overcharged. Assuming so, he must "allege facts … or produce statistical evidence demonstrating a causal connection." *Inclusive Communities Project, Inc.*, 576 U.S. at 543.

To that end, he alleges that "minority tenants … are more likely to seek and qualify for affordable housing." [Dkt. 60 ¶ 18.] Even if the court accepts this conclusory assertion as true, without proffered statistical or anecdotal support,[3] more is needed to establish the requisite connection. Specifically, the complaint fails to allege—let alone support with statistics or facts—that the ability to pay market rent differs among minority and non-minority individuals who *do* rent non-affordable housing, the inequitable barrier to entry notwithstanding.

In any event, it's unclear as to whether he believes this "policy" was enforced against anyone but him. The complaint alleges that Coldwell Banker "engaged in a facially neutral practice by facilitating leases for the *subject* property without disclosing its ERAMP affordable housing status or complying with its rent caps." [Dkt. 60 ¶ 17 (emphasis added).] Isolated decisions "may not amount to a policy in the absence of other evidence," unless the single decision causes significant disparities, i.e. by affecting large groups of people. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 929 (7th Cir. 2018). *See also Inclusive Communities Project, Inc.*, 576 U.S. at 543 ("For instance, a plaintiff challenging the decision of a private developer to construct a new building in one location rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all.") If it's only his apartment at issue, and if the disparate impact relates to overcharging tenants rather than deterring applicants, then Coldwell Banker's "policy," as alleged, is a one-off that affects only him.

Hobbs's opposition brief provides neither clarity as to the alleged harm nor the missing statistical or factual support. It states only that:

---

[3] The court is skeptical that such a conclusion is itself sufficient, as it would eliminate the need to ever plead statistics.

> Judge Jenkins already denied dismissal of this claim (Dkt. 52 at 5-6). Rule 12(g)(2) prohibits successive motions. ERAMP concealment policy (SAC paragraph 26, Ex. I) is admitted by silence. No statistical evidence is required at the pleading stage. Bloch v. Frischholz, 587 F.3d 771, 784 (7th Cir. 2009).

[Dkt. 67 at 4.] The court, however, denied dismissal of this claim only as to Landlord Defendants, so Coldwell Banker's motion is not successive. [*See* Dkt. 51.] Nor are his arguments of admission-by-silence and statistical evidence persuasive, given that his failure to plead a causal connection—either via statistics *or facts*—is ultimately fatal. In any event, his citations to SAC ¶ 26 and *Bloch* do not support the claims to which they are attached; the former relates only to his alleged disability, and the latter says nothing of statistical evidence.

The court therefore grants Coldwell Banker's motion to dismiss Hobbs's disparate impact claim. This dismissal is with prejudice.

## B. Disability Discrimination (Landlord Defendants)

Hobbs initially pursued both disparate-treatment and failure-to-accommodate theories of disability discrimination. He now pursues only the latter, which the court previously dismissed because the desired "accommodations" were actually modifications. [Dkt. 52 at 9.] It observed that:

> Reasonable accommodations, under § 3604, refer to "rules, policies, practices, or services" that are "necessary to afford such person equal opportunity to use and enjoy a dwelling." These are distinct from "reasonable modifications," which a landlord need only permit the tenant to make at his own expense. Hobbs alleges that Goncharko/5120 failed to accommodate his disability "through necessary repairs." [Dkt. 8 ¶ 28]. But "a 'request for (re)construction or repair is more appropriately a request for a modification than an accommodation' and therefore is not actionable under the FHA." *Fedynich v. Stalkfleet*, 2025 WL 1444434, at \*14 (N.D. Iowa May 20, 2025) (quoting *Weiss v. 2100 Condo. Ass'n, Inc.*, 941 F. Supp. 2d 1337, 1344–45 (S.D. Fla. 2013) (collecting cases)). *See also Fagundes v. Charter Builders, Inc.*, 2008 WL 268977 at \*6 (N.D. Cal. Jan. 29, 2008) ("request for construction or repair is not actionable under subsection (B)"). Indeed, in the Seventh Circuit, examples of "rules, policies, practices, or services" include zoning ordinances, parking restrictions, and no-pets policies—not unit maintenance. *See, e.g., Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 785 (7th Cir. 2002); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

[*Id.*] Hobbs therefore failed to satisfy the final element of the failure-to-accommodate inquiry, which demands that "(1) the plaintiff had a disability; (2) the defendant was aware of disability; and (3) the defendant failed to *reasonably accommodate* the

disability." *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022) (emphasis added).[4]

Hobbs now explains that he requested: (a) doorbell and entry locks, a secure entry system, and secure window guards because he was now "unable to defend himself in case of emergency or burglary," (b) remediation of a "severe rodent infestation," and (c) "settlement on eviction proceedings or a payment plan due to his disability-related financial hardship." [Dkt. 60 ¶ 12.] Landlord Defendants respond only that "[a]ll of the items that Plaintiff mentions for the accommodations he requested are modifications to the premises or construction to the property [and so] they are not accommodations." [Dkt. 66 at 3.]

The court agrees that installation of doorbells, locks, entryway intercom, and window guards are each a "request for (re)construction or repair [that] is more appropriately a request for a modification than an accommodation." *See Weiss*, 941 F. Supp. 2d at 1344 (collecting cases). This is true despite Hobbs's characterization of them as a "safety policy exception" necessary to "prevent thieves [from] entering the unit." [Dkt. 67 at 6.] It would be different if what he sought was exemption from a policy that *requires* or *prevents* certain safety measures. But he alleges no baseline policy—just new structures or installations. And Housing and Urban Development Regulations provide explicitly that "[m]odification means any change to the public or common use areas of a building or any change to a dwelling unit." 24 C.F.R § 100.201.

However, the court cannot agree that pest control services and eviction procedures are modifications. Hobbs specifically paints his pest control needs as a request for "[e]xpedited rodent remediation," since, because of his injury, he could not himself "bend or squat to clean infested areas without risking re-injury." [Dkt. 67 at 5.] Remediation is a service, and by requesting that Landlord Defendants change *how* they provide that service—i.e., by doing so faster—he alleges an accommodation. So, too, is it an accommodation to request reprieve from eviction enforcement. *See Hunt v. Aimco Props.*, L.P., 814 F.3d 1213, 1226 (11th Cir. 2016) (characterizing plaintiff's request for non-enforcement of no-threats eviction policy as accommodation); *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 2012 WL 1877740, at *9 (N.D. Ind. May 18, 2012) (same, discussing HUD guidance).

Even so, an accommodation must be necessary *because* of the disability. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). This "limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified." *Id.* The Seventh Circuit has "enforced this limitation by asking whether the rule in question, if left unmodified, hurts 'handicapped people *by reason of their handicap,* rather than … by virtue of what they have in common with other people, such as a limited amount of

---

[4] In its previous decision, the court held that Hobbs had sufficiently alleged his disability, and that Landlord Defendants could have been on notice of it. [Dkt. 52 at 8–9.]

money to spend on housing.'" *Id.* (citing *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park,* 171 F.3d 437, 440 (7th Cir. 1999) (emphasis in original)). For example, in the context of a city's decision to deny water to a group home for disabled people, the Seventh Circuit observed that "[c]utting off water prevents anyone from living in a dwelling, not just handicapped people." *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 562 (7th Cir. 2003). It therefore rejected the "principle that because a rule, policy, etc. that adversely affects all residents' ability to access a dwelling also affects disabled residents' access, a city must therefore provide a reasonable accommodation." *Id.*

For this reason, any eviction-related requests are not actionable. Hobbs alleges that he sought reprieve because of his "disability-related financial hardship." [Dkt. 60 ¶ 12.] But "financial hardship" is not unique to people with disabilities, "even if disabled people are more likely to be poor." *Good Shepherd Manor Found.*, 323 F.3d at 563.

The rodent infestation presents a more difficult question. On one hand, like a residence with no water supply, a rodent-infested apartment is—more likely than not—equally uninhabitable to all. *Id.* at 562. But on the other, Hobbs suggests that his need for remediation was more urgent than others because his disability left him unable to clean. It is at least plausible to infer that non-disabled residents—on account of their ability to self-mitigate—are uniquely positioned to temporarily endure an infestation. Drawing an inference in Hobbs's favor, as the court must at the pleading stage, there are sufficient allegations to survive dismissal—especially in light of Landlord Defendants' failure to themselves discuss the equal-opportunity limitation.

To be sure, Hobbs will need to present evidence to bridge the gap currently filled by the court's inference. Put differently, he'll need to establish that he did, in fact, seek expedited remediation because of a disability-caused inability to clean. So, too, do fact-intensive questions of reasonableness—also unbriefed by Landlord Defendants—remain. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) ("Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties.") But as amended, the complaint alleges a plausible theory of disability discrimination.

### C. Retaliation (Landlord Defendants)

Finally, Hobbs's first attempt to plead retaliation failed because he never alleged that he engaged in a protected activity prior to the alleged retaliation. [Dkt. 52 at 10.] Though he alleged that Landlord Defendants retaliated "because he requested repairs and pursued funds owed," he didn't "allege that he ever previously complained—to the property owner or to a housing authority—that the maintenance refusals were discriminatory," nor did he allege that he sought "unpaid funds

7

pursuant to his FHA rights." [*Id.*] At least, not prior to Landlord Defendants' alleged retaliation.

Now he does. According to the complaint, the "Landlord Defendants' conduct escalated after Plaintiff *complained of discrimination* and filed lawsuits to enforce his rights." [Dkt. 60 ¶ 13 (emphasis added).] Hobbs also now alleges that he "pursu[ed] his rights through City of Chicago Department of Housing complaints and this federal and foreclosure lawsuits." [*Id.* ¶ 32.]

To plead retaliation, he need allege only "that: (1) [he] engaged in protected activity; (2) [he] suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018). By alleging that threatening conduct *followed* "complain[ts] of discrimination," and that the various adverse actions occurred "*[b]ecause of*" his activities, he has met his burden. [Dkt. 60 ¶¶ 13, 33 (emphasis added).]

Landlord Defendants' arguments to the contrary fall flat. They say "[h]e has not alleged that he complained to 5120/Goncharko or a housing authority that the maintenance issues were discriminatory." [Dkt. 69 at 3.] But he has. [*See* Dkt. 60 ¶ 13 ("conduct escalated after Plaintiff complained of discrimination").] They also argue that "complaints of discriminatory maintenance should not even be considered because he would not let people into the apartment to do maintenance." [Dkt. 66 at 5.] But that speaks to their motive, which is "not [a] proper consideration[] on a motion to dismiss and should be left for a later stage of the proceedings." *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 267 (E.D.N.Y. 2009). *See also Herndon v. Hous. Auth. of S. Bend, Indiana*, 670 F. App'x 417, 419 (7th Cir. 2016) (confirming that he need only allege retaliation, not prove it, at the pleading stage.) Finally, they reason that "[t]he eviction was filed long before the instant Federal Court matter," and that Hobbs provides no specificity as to when he contacted the City of Chicago Housing Department. [Dkt. 66 at 5.] True, but (1) he now complains of accelerated proceedings and a July bad-faith notice to enter, *see* dkt. 60 ¶ 33, which postdate his filing this lawsuit, and (2) his explicit allegations as to complaints of discrimination are themselves sufficient to state a claim.

Therefore, the amended complaint presents a plausible theory of retaliation, so the claim survives.

## IV. Conclusion

For these reasons, Landlord Defendants' motion to dismiss is denied, and Hobbs may proceed against Defendants Goncharko and 5120 South on his racial discrimination, failure-to-accommodate disability discrimination, and retaliation claims. Coldwell Banker's motion to dismiss is granted and that dismissal is with prejudice.

Enter: 25-cv-3398
Date:  January 16, 2026

_____
Lindsay C. Jenkins